UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BETUEL CASTRO CAMACHO,

    Petitioner,

    v.

WARDEN *et al.*,

    Respondents.

CAUSE NO. 3:26cv709 DRL-SJF

<u>OPINION AND ORDER</u>

Immigration detainee Betuel Castro Camacho, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States.

Mr. Castro Camacho is a native and citizen of Columbia who entered the United States without admission or inspection in 2023 [8-2]. In December 2023, he was arrested by Customs and Border Patrol (CBP) in Texas and served with a notice to appear. CBP then released him on conditional parole pursuant to an Order of Release on Recognizance, Form I-220A.[1] He applied for work authorization, and was approved.

On May 20, 2026, Mr. Castro Camacho was arrested in Jackson County, Indiana, for possession of marijuana [8-2; 12-1]. He was transferred into United States Immigration and Customs Enforcement (ICE) custody and arrested pursuant to a warrant, which was signed by a Supervisory Detention and Deportation Officer, or SDDO [8-2]. On May 21,

---

[1] Neither party provides a copy of the Form I-220A.

2026, ICE issued a "Cancellation of Form I-220A," stating that his release order was canceled. *Id.* at 12. The "Cancellation of Form I-220A" was signed by an Assistant Field Office Director, or AFOD. The respondents assert Mr. Castro Camacho remains detained at Miami Correctional Facility as an "applicant for admission" under 8 U.S.C. § 1225(b)(2) pending the outcome of his removal proceedings.

In his habeas petition, Mr. Castro Camacho argues he has been unlawfully denied an opportunity for release on bond because officials view him as categorically ineligible for bond under 8 U.S.C. § 1225(b)(2). He seeks immediate release from custody. In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25cv898, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), *appeal docketed*, No. 26-1145 (7th Cir. Jan. 26, 2026), which joined a large majority of other courts in concluding that § 1225(b)(2) does not apply to noncitizens when they are not "seeking admission" within the statute's meaning. *See also Singh v. English*, No. 3:25cv962, 2025 WL 3713715, 5 (N.D. Ind. Dec. 23, 2025) ("In short, under § 1225(b)(2), an alien must be an 'applicant for admission,' and the alien must be 'seeking admission,' and an examining immigration officer must determine that this alien 'is not clearly and beyond a doubt entitled to be admitted' for mandatory detention to occur under this subsection."). The respondents were instructed to address why this case differs from *Aguilar* and *Singh*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently. That response was filed, and Mr. Castro Camacho filed a reply.

As a preliminary matter, Mr. Castro Camacho was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946, 952 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). Mr. Castro Camacho does not address this issue in his response. Therefore, these additional parties will be dismissed. For clarity, the court refers to the responding party as the Warden from this point forward.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Castro Camacho's detention is authorized by § 1225(b)(2). These arguments were rejected in *Aguilar* and *Singh* (and other decisions). *See supra; see also Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government.

In addition, beyond jurisdiction, our circuit recently joined a majority of courts in concluding that § 1225(b)(2) does not apply to noncitizens who are not otherwise "seeking admission" within the statute's meaning. *Cirrus Rojas v. Olson*, __F.4th__, 2026

3

WL 2198315, 2 (7th Cir. July 30, 2026); *cf. Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 2026 WL 1223250 (7th Cir. May 5, 2026) (reading as a 2-1 decision in the result only and at times as a 1-1-1 decision in the rationale).

The question remains whether there is anything unique here that would warrant a different conclusion than that reached in *Aguilar*, *Singh*, and *Cirrus Rojas*. The court can find no such reason. The mandatory detention provision in § 1225(b)(2) does not apply to individuals like Mr. Castro Camacho who are arrested within the interior of the country years after their arrival. Application of the statute is particularly untenable here, given that Mr. Castro Camacho has been living in the United States for a period of years pursuant to a release order. Whether Mr. Castro Camacho is an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission."

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may continue to detain the [noncitizen]; and (2) may release the [noncitizen] on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a).

When a noncitizen has already been detained and released, as Mr. Castro Camacho has, § 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The implementing regulation further provides:

4

> When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

8 C.F.R. § 236.1(c)(9). The regulations expand the term "district director" to include:

> to the extent that authority has been delegated to such official: asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge. The terms also mean such other official, including an official in an acting capacity, within U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, or other component of the Department of Homeland Security who is delegated the function or authority above for a particular geographic district, region, or area.

8 C.F.R. §1.2. The Attorney General thus has statutory authority to take Mr. Castro Camacho into custody a second time if he, or his delegate, finds such action warranted.

Mr. Castro Camacho argues that his release was never revoked in accordance with the agency's own procedures. He is correct that federal agencies are required to follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *see also Zelaya Diaz v. Rosen*, 986 F.3d 687, 692 (7th Cir. 2021) (under *Accardi*, federal agencies are required to follow their own regulations, including those relating to the exercise of discretion); *Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002) ("courts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests"); *Z.G. v. Olson*, No. 3:26cv119, 2026 WL 1279081, 5 (N.D. Ind. May 11, 2026) ("due process requires that these procedures be fairly given, not taken away"). That was not done here.

Although a warrant was issued for Mr. Castro Camacho's re-arrest in 2026, there is a distinction between the act of issuing an arrest warrant and the act of revoking parole, as they involve different forms and procedures. Additionally, the warrant for Mr. Castro Camacho's arrest was signed by an SDDO, who is not one of the authorized officials in 8 C.F.R. § 236.1(c)(9) who can revoke bond or conditional parole. And the "Cancellation of Form I-220A" was signed by an AFOD, who is likewise not one of the officials authorized to revoke bond or conditional parole. There is also nothing before the court to suggest that an SDDO or AFOD has been delegated revocation authority by the Attorney General. *See* 8 C.F.R. § 2.1; *see, e.g., Zhang v. Genalo*, 814 F. Supp.3d 307, 321 (E.D.N.Y. 2025) (AFOD lacked authority to sign noncitizen's notice of revocation).

The Warden does not argue that Mr. Castro Camacho's parole was properly revoked in accordance with regulatory procedures so as to justify his current detention. Nor does he argue the SDDO or AFOD were authorized to revoke Mr. Castro Camacho's parole or that any deviation from the regulations were harmless error. Instead, he rests on the rejected argument that Mr. Castro Camacho is subject to mandatory detention under § 1225(b)(2). The Warden presents an exhaustion argument, but only with respect to that now rejected view of § 1225(b)(2). The Warden has not argued that this procedural or regulatory error could be redressed through some administrative review or otherwise exhausted, and it would be inappropriate for the court to construct that argument for the Warden, frankly to construct arguments for either side. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025). Accordingly, the court is left with a record that seems to show the government violated its regulatory procedures in revoking his parole.

The court turns to the remedy. When he was arrested near the border in 2023, Mr. Castro Camacho was released into the United States on his own recognizance under § 1226(a)(2)(B) with conditions to be followed to remain on release. There is evidence Mr. Castro Camacho may have violated those conditions based on his arrest for marijuana possession. Under these circumstances, it is necessary to afford the Attorney General a chance to perfect the legality of Mr. Castro Camacho's detention by allowing an opportunity for an individual authorized under § 236.1(c)(9) to exercise his or her discretion and determine whether Mr. Castro Camacho's parole should be revoked. *See Nielsen v. Preap*, 586 U.S. 392, 411 (2019) ("[A]s we have held time and again, an official's crucial duties are better carried out late than never."). It is not the court's prerogative to assume the role of the Attorney General by deciding release or detention, and Mr. Castro Camacho gives the court no reason to believe the process he is due under § 1226(a) is insufficient to remedy the violation here. *See Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases). If Mr. Castro Camacho's parole is not promptly and properly revoked, he shall be released on the terms of his most recent release order.

For these reasons, the court:

(1) DISMISSES respondents Samuel Olson, Director of United States Immigration and Customs Enforcement Chicago Field Office; Markwayne Mullin, Secretary of the United States Department of Homeland Security; and Todd Blanche, Acting Attorney General of the United States; from this lawsuit;

7

(2) CONDITIONALLY GRANTS the petition (ECF 1) and ORDERS the respondent to release Betuel Castro Camacho on **August 28, 2026**, unless his parole is properly revoked by an individual authorized under 8 C.F.R. § 236.1(c)(9) and proof of that revocation is filed in this lawsuit;

(3) DIRECTS the clerk to email forthwith a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure compliance with this order; and

(4) ORDERS the respondent to file proof of compliance with this order by **August 31, 2026**.

SO ORDERED.

August 13, 2026                                          *s/ Damon R. Leichty*
                                                        Judge, United States District Court

8